UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS C. ARMSTRONG (#A35872)** | **CIVIL ACTION** |
| **VERSUS** | |
| **ASCENSION PARISH JAIL, ET AL.** | **NO. 07-0039-FJP-DLD** |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 25, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

THOMAS C. ARMSTRONG (#A35872)                                    CIVIL ACTION

VERSUS

ASCENSION PARISH JAIL, ET AL.                                    NO. 07-0039-JFP-DLD

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 53. This motion is not opposed.

The pro se plaintiff, a prisoner previously confined at the Ascension Parish Jail, Donaldsonville, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against the Ascension Parish Jail, Warden Bobby Webre and Nurse Michelle Gaudin, complaining that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs, specifically by failing to provide him with appropriate medical treatment for his eyes. Pursuant to earlier Report and Recommendation, approved by the District Judge on June 19, 2008, see rec.doc.nos. 35 and 40, the Court has dismissed the plaintiff's claim asserted against the Ascension Parish Jail.

The defendants now move for summary judgment relying upon the pleadings, a Statement of Uncontested Material Facts, certified excerpts from the plaintiff's administrative remedy proceedings and medical records, and unreported decisions from other Districts within this Circuit, Swaissi v. Cotten, 2002 WL 492905 (N.D. Tex., March 28, 2002), and Glass v. Orleans parish Criminal Sheriff, 2005 WL 1501019 (E.D. La., June 22, 2005).

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving

party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his unsworn Complaint, the plaintiff alleges that in April, 2006, he began attempting to obtain medical treatment for his eyes. He asserts that he suffered with "severe headaches" and that his vision was "steadily getting worse". He visited the nurse in the prison infirmary on multiple occasions, but the nurse stated that there was nothing she could do for him. He asserts that medical treatment by an eye specialist was neither available nor provided at the jail, and that when such specialized treatment was requested, it was instead provided by unqualified personnel. In supplemental pleadings before the Court, the plaintiff acknowledges that, in June, 2007, a little over a year after first requesting treatment, he was seen by a physician at the Jail who referred him for an appointment to see an eye doctor. In September, 2007, he was provided with prescription eyeglasses.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims made against them. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.[1]

Undertaking the Saucier analysis, the Court concludes that the defendant's motion is well-taken, and that they are entitled to qualified immunity in connection with the plaintiff's claims asserted against them.

Inasmuch as the plaintiff in this case was, at all times pertinent hereto, a pretrial detainee and not a convicted felon, his constitutional rights flow from the Due Process Clause of the Fourteenth Amendment instead of from the Eighth Amendment's prohibition against cruel and unusual

---

[1] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

punishment.  Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1976) (en banc), citing Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  Courts apply different tests when "analyzing constitutional challenges by pretrial detainees", depending upon whether the challenge is classified "as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" Scott v. Moore, 114 F.3d 51 (5th Cir. 1997) (en banc), quoting Hare, supra.  Challenges to general conditions of confinement require the application of "the reasonable relationship test of Bell v. Wolfish, [supra]." Under that test, "a constitutional violation exists only if [the Court finds] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."  Id.  If the complained-of harm is a particular act or omission of one or more officials, however, the action is characterized as an "episodic act or omission" case.  See Hare, supra.  To prove a violation of constitutional rights in connection with an episodic act or omission case, a detainee must establish that prison officials acted with subjective deliberate indifference as set forth in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  As stated in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

In the instant case, the plaintiff alleges that the defendants failed to provide him with appropriate medical care and delayed in providing him with eyeglasses.  This specific complaint does not attack the rules or conditions existing at the Ascension Parish Jail, but rather concerns acts or omissions of jail officials in failing to provide him with proper medical care.  Thus, the plaintiff's claim relative to the denial and delay of medical care should be analyzed under the "episodic act or omission" standard.  See, e.g., Stevenson v. Anderson, 2002 WL 432889 (N.D. Tex., Mar. 18, 2002) (holding that the plaintiff's claim that the defendants denied him medical care was an "episodic" claim).  In any event, the courts have held that the deliberate indifference standard applicable to episodic claims is "functionally equivalent" to the reasonable relationship standard applicable to conditions claims.  Scott v. Moore, supra.  Thus the Farmer v. Brennan deliberate indifference standard is the appropriate standard for the plaintiff's claim of denial of medical care claim in the

instant case. The deliberate indifference standard sets a high bar: the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Based on the foregoing, the Court concludes that the defendants are entitled to qualified immunity in connection with the plaintiff's claim of deliberate medical indifference. Specifically, the defendants have produced evidence reflecting that the plaintiff completed an Inmate Screening Form in March, 2006, wherein he indicated that he did not wear eyeglasses or contact lenses. Although he thereafter requested eyeglasses in April, 2006, and complained of headaches and blurred vision thereafter, he has made no evidentiary showing regarding the severity of his eyesight condition. In fact, he has presented no opposition whatever to the defendants' motion. The record evidence reflects that on October 4, 2006, after requesting eyeglasses from the defendant nurse on several occasions, the plaintiff was seen by a physician at the Jail who noted that the plaintiff complained of headaches and stated a belief that his headaches were probably being caused by his "vision". At that time, the physician noted that the plaintiff had "HTN" (hypertension) and ordered diagnostic testing. When the plaintiff returned to the physician several days later on October 11, 2006, the lab results were reviewed and the plaintiff was noted to have "mild anemia". The plaintiff did not renew his complaints of headaches or vision problems at that time. The Court further notes that a medical record generated during a visit between the plaintiff and defendant Nurse Gaudin in February, 2007,

reflects that the plaintiff reported to her that, whereas he had obtained a prescription for eyeglasses in early 2000, his wife had lost the prescription, so it was never filled.  As a result, it appears that the plaintiff's eyesight, at least during the six (6) years immediately preceding his incarceration, was not so deficient as to warrant his making a concerted effort to obtain eyeglasses.  The Court further notes that the plaintiff's eyesight is not so bad as to prevent him from writing and filing pleadings in this proceeding.  In June, 2007, the plaintiff was again seen by the physician at the Jail and reported a decrease in vision at that time.  Upon examination, the physician recommended that the plaintiff be provided with eyeglasses, and it appears that shortly thereafter, in July, 2007, the plaintiff was scheduled for an appointment with an optometrist, and in September, 2007, after obtaining a prescription, he was provided with eyeglasses.  In addition to the foregoing, he defendants have produced evidence reflecting that the plaintiff was seen on many occasions for medical attention and treatment during the time that he was confined at the Ascension Parish Jail, and that he was routinely provided with medication for his headaches and for other complaints.  Accordingly, it does not appear that there is any evidence in the record that the defendants were subjectively aware of a serious medical need which they ignored.

Several courts within this Circuit have recognized that "in _some_ circumstances, a vision impairment may be so severe as to constitute a serious medical need",  Glass v. Orleans Parish Criminal Sheriff, 2005 WL 1501019 (E.D. La. June 22, 2005) (emphasis in original), and that "poor vision may, under certain circumstances", reach this milestone, Swaissi v. Cotten, 2002 WL 492905 (N.D. Tex. March 28, 2002), citing Koehl v. Dalsheim, 85 F.3d 86 (2nd Cir. 1996), and Benter v. Peck, 825 F.Supp. 1411 (S.D. Iowa 1993).  However, "less severe vision impairments do not qualify." See Glass v. Orleans Parish Criminal Sheriff, supra ("[M]oderate nearsightedness, such as that described by plaintiff, simply is not a medical need sufficiently serious to implicate constitutional protections.").  See also Swaissi v. Cotten, supra (nearsightedness causing difficulty reading, writing and watching television determined not to be a serious medical need).  Based upon the evidence in the record,

there is no indication that the plaintiff's vision impairments were sufficiently serious to warrant a conclusion that they presented a serious medical need.[2]

Finally, as noted above, despite notice and an opportunity to appear, the plaintiff has not come forward with any opposition to the defendants' motion for summary judgment or to the factual assertions contained therein. Other than the mere allegations of the plaintiff's unsworn Complaint, unsupported by affidavit(s) or other corroborating evidence, there is nothing before the Court which establishes that the defendants were subjectively aware of a serious medical need which they ignored. What is before the Court for consideration is evidence adduced by the defendants, supported by documentation and bolstered by the supporting affidavit of defendant Nurse Gaudin, which reflects that prison officials attended to the plaintiff's medical complaints, prescribed him medication for his headaches, and ultimately provided him with a referral to an eye specialist and with eyeglasses. Although the plaintiff asserts that the defendants' delay in providing him with eyeglasses amounted to a violation of his constitutional rights, he does not dispute or even address the evidence adduced by the defendants, and he does not show that such delay has resulted in substantial harm. See Mendoza v. Lynaugh, supra. See also Kemppainen v. Aransas County Det. Ctr., 2010 WL 4918958 (S.D. Tex., Nov. 23, 2010) (summary judgment granted to defendants where plaintiff failed to produce evidence "regarding the severity of his visual impairment during the time of his confinement"). Accordingly, based upon the foregoing, and upon the plaintiff's failure in this case to oppose the defendants' motion for summary judgment, failure to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to produce supporting evidence on his own behalf, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477

---

[2] Although not relied upon by the Court – because there is no affidavit from a medical professional regarding the interpretation thereof – the Court notes that the prescription for the plaintiff's eyeglasses in August, 2007 was for bifocal lenses with -1.00 correction in both eyes for distance vision and with +1.50 correction in both eyes for reading vision, which does not appear to reflect the existence of a severe vision impairment.

U.S. 242, 106 S.Ct. 2501, 91 L.Ed.2d 202 (1986); Phillips Oil Company v. OKC Corp., 812 F.2d 265 (5th Cir.), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), the Court concludes that the defendants' motion is well-taken and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendants' motion for summary judgment, rec.doc.no. 53, be granted, and that this action be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on February 25, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**